**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| SIAN ERSKINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      1:20CV1176 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant.[1] | ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Sian Erskine, brought this action pursuant to Section 205(g) of the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claims for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 9 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 12, 15; see also Docket Entry 13 (Plaintiff's Memorandum); Docket Entry 16 (Defendant's Memorandum); Docket Entry 17 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] President Joseph R. Biden, Jr., appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 190-96), alleging a disability onset date of August 1, 2016 (see Tr. 190).[2] Upon denial of that application initially (Tr. 90-100, 115-18) and on reconsideration (Tr. 101-14, 125-28), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 132-33). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 58-89.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 35-45.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 22-27, 187-89), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2021.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since February 15, 2018, the amended alleged onset date.
>
> 3. [Plaintiff] has the following severe impairment: multiple sclerosis.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals

_____

[2] At the end of the administrative hearing, Plaintiff amended her alleged onset date to February 15, 2018. (See Tr. 38, 87-88.)

the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

5.  . . . [Plaintiff] has the residual functional
capacity to perform light work . . . with the following
exceptions: [s]he can occasionally climb, balance, stoop,
kneel, crouch, and crawl.

. . .

6.  [Plaintiff] is capable of performing past relevant
work as an adult education teacher, an assistant retail
manager, and a middle school teacher.  This work does not
require the performance of work-related activities
precluded by [Plaintiff]'s residual functional capacity.

. . .

7.  [Plaintiff] has not been under a disability, as
defined in the . . . Act, from February 15, 2018, through
the date of this decision.

(Tr. 40-45 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope
of [the Court's] review of [such a] decision . . . is extremely
limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).
Plaintiff has not shown entitlement to relief under the extremely
limited review standard.

3

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead,
the Court "must uphold the factual findings of the ALJ [underlying
the denial of benefits] if they are supported by substantial
evidence and were reached through application of the correct legal
standard." Hines, 453 F.3d at 561 (internal brackets and quotation
marks omitted).  "Substantial evidence means 'such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir.
1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)).
"It consists of more than a mere scintilla of evidence but may be
somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d
171, 176 (4th Cir. 2001) (internal citations and quotation marks
omitted).  "If there is evidence to justify a refusal to direct a
verdict were the case before a jury, then there is substantial
evidence." Hunter, 993 F.2d at 34 (internal quotation marks
omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal
brackets and quotation marks omitted).  "Where conflicting evidence
allows reasonable minds to differ as to whether a claimant is

4

disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's

---

[3] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." <u>Albright v. Commissioner of the Soc. Sec. Admin.</u>, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." <u>Bennett v. Sullivan</u>, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." <u>Mastro</u>, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." <u>Hunter</u>, 993 F.2d at 35 (internal citations omitted).

6

two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." <u>Id.</u> at 179.[5] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. <u>See id.</u> at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[6]

---

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." <u>Hines</u>, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." <u>Hall</u>, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." <u>Hines</u>, 453 F.3d at 562-63.

[6] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail
(continued...)

7

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ erred by failing to perform a proper function-by-function evaluation of Plaintiff's ability to reach, handle and finger with her [left upper extremity and] her ability to stand and walk when formulating the RFC" (Docket Entry 13 at 4 (bold font and single-spacing omitted); see also Docket Entry 17 at 1); and

2) "[t]he [Appeals Council] erred by failing to evaluate and consider the medical opinion evidence submitted at the [Appeals Council]" (Docket Entry 13 at 9 (bold font and single-spacing omitted); see also Docket Entry 17 at 1-2).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 16 at 11-24.)

### 1. Function-by-Function Analysis

In Plaintiff's first issue on review, she alleges that "[t]he ALJ erred by failing to perform a proper function-by-function evaluation of Plaintiff's ability to reach, handle and finger with her [left upper extremity and] her ability to stand and walk when formulating the RFC." (Docket Entry 13 at 4 (bold font and single-

---

[6](...continued)
at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

spacing omitted); see also Docket Entry 17 at 1.) In support of
that argument, Plaintiff points to her "testi[mony] that she cannot
type with her left hand at all and that she left her last job
because she could not be on her feet a lot" (Docket Entry 13 at 4
(citing Tr. 65-66)), "that her left leg is weak, as is her left arm
and hand" (id. (citing Tr. 67)), that, [w]hen she loses energy[,]
her left hand draws into a ball and her walk becomes worse" (id.
(citing Tr. 69)), "that she could only persist at an activity for
about 45 minutes" (id. (citing Tr. 73)), and that, "[a]t the end of
her last job, she was calling in sick one-to-two times per week"
(id. (citing Tr. 70)). Plaintiff further contends that "the
medical evidence of record" supports Plaintiff's above-described
subjective statements. (Id. at 7; see also id. at 7-8 (detailing
evidence Plaintiff believes documents severity and limiting effects
of her multiple sclerosis (citing Tr. 351, 437, 521, 557-58, 561,
618, 729, 803-04, 843, 850, 857-58, 870)).) Plaintiff asserts
that, "[d]espite th[at] testimony [and evidence], the ALJ assessed
no manipulative limitations for [Plaintiff] in his RFC[, ] found
that she could perform the full range of standing and walking
required of light work, which is up to six hours in an eight-hour
work day[, and] . . . did not calculate any time off-task or
absences based on [Plaintiff]'s fatigue." (Id. at 4-5 (citing Tr.
42).)

Plaintiff additionally notes that the United States Court of Appeals for the Fourth Circuit "recently clarified . . . that[,] for functions that are contested and relevant to determining the claimant's disability status, a supportable function-by-function analysis must be performed." (Id. at 8 (citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 388-89 (4th Cir. 2021)).) According to Plaintiff, the [ALJ's] findings regarding [Plaintiff]'s ability to use her [left upper extremity], stand[,] and walk, a[s well as] his calculation of her time off-task and absenteeism are of critical importance because they are potentially outcome determinative issues." (Id.) Plaintiff thus contends that "remand is necessary for a proper and supportable function-by-function analysis of the contested functions in this matter." (Id.) Plaintiff's contentions miss the mark.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. § 404.1545(a). An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. § 404.1545(b). The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. § 404.1567. Any non-exertional limitations

may further restrict a claimant's ability to perform jobs within an exertional level. See 20 C.F.R. § 404.1569a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination. See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014). However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted). As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing [RFC] in Initial Claims, 1996 WL 374184, at *1 (July 2, 1994) ("SSR 96-8p").

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand. See Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015). Specifically, it stated "that a per se rule is inappropriate given that remand would

11

prove futile in cases where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Here, the ALJ did not perform a function-by-function analysis of Plaintiff's work-related abilities (see Tr. 42-45); however, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and his findings that Plaintiff's (A) multiple sclerosis qualified as "severe" (Tr. 40) but (B) did not cause limitations greater than those reflected in the RFC (see Tr. 41-42).

The ALJ's evaluation of the opinion evidence explains the limitations in the RFC. In that regard, the ALJ found "persuasive" the opinions of the reconsideration-level state agency medical consultant (Tr. 44), who limited Plaintiff to light work (including up to six hours each of standing and walking) with occasional climbing, balancing, stooping, kneeling, crouching, and crawling and no manipulative restrictions or allowances for time off-task or absences (see Tr. 109-10). In that regard, the ALJ expressly noted

12

that he found the reconsideration-level consultant's opinions more persuasive than those of the initial-level consultant (who had found Plaintiff capable of the <u>full</u> range of light work (<u>see</u> Tr. 95-96)), because the reconsideration-level consultant's opinions "better account[ed] for the <u>mild</u> deficits of coordination documented in [Plaintiff]'s medical history" (Tr. 44 (emphasis added)).

The ALJ's analysis of Plaintiff's subjective symptom reporting further explains the RFC's limitations. The ALJ discussed at length Plaintiff's testimony regarding the impact of her multiple sclerosis on her ability to manipulate items with her left hand, her balance and gait, and her energy level (<u>see</u> Tr. 42), but found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (Tr. 43). In particular, the ALJ noted that he found Plaintiff's testimony regarding her left arm symptoms "unpersuasive because her medical history d[id] not demonstrate that her left arm ha[d] been <u>significantly</u> impaired on a chronic basis" (<u>id.</u> (emphasis added)), and observed that "the motor strength in her left arm was only <u>mildly</u> reduced at 5-/5" (<u>id.</u> (emphasis added) (citing Tr. 425)). Regarding Plaintiff's claimed left leg weakness and unsteady gait, the ALJ found that Plaintiff's "medical history show[ed] that her [multiple sclerosis] . . . d[id] not cause her to

13

have more than _mild_ functional limitations on a chronic basis" (_id._ (emphasis added)), and noted findings that "her gait and leg strength had improved," that her gait remained only "_mildly_ wide with left foot drop," that "her balance was unimpaired," and her left leg strength "was _slightly_ decreased at 5-/5" (_id._ (emphasis added) (citing Tr. 421, 425); _see also id._ (discussing findings of treating physician of weakness in extremities but only "'mild discoordination and mild limp'")).[7]

Furthermore, the ALJ commented on the type and effectiveness of Plaintiff's treatment, noting "evidence showing that [Plaintiff]'s [multiple sclerosis wa]s manageable with Tysabri, Adderall, and exercise[, and] that her gait improved with the use of a WalkAide device." (Tr. 44; _see also_ Tr. 43 (finding Plaintiff's multiple sclerosis "controlled with Tysabri" and her

_____

[7] In Plaintiff's reply, she deems the Commissioner's arguments "post hoc rationalizations . . . [t]o the extent that [the Commissioner] relie[d] upon medical summary not provided by the ALJ." (Docket Entry 17 at 1 (citing, _inter alia_, Docket Entry 16 at 14-17 and _Arakas v. Commissioner of Soc. Sec._, 983 F.3d 83, 109 (4th Cir. 2020)).) Plaintiff, however, makes no attempt to point out which of the Commissioner's statements on the four pages of her Memorandum Plaintiff cited constitute a "post hoc rationalization." (_Id._) That failure precludes relief. _See United States v. Zannino_, 895 F.2d 1, 17 (1st Cir. 1990) ("[A] litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (internal quotation marks omitted)); _Hughes v. B/E Aerospace, Inc._, No. 1:12CV717, 2014 WL 906201, at *1 n.1 (M.D.N.C. Mar. 7, 2014) (unpublished) (Schroeder, J.) ("A party should not expect a court to do the work that it elected not to do."). Furthermore, although the Commissioner discussed findings in medical records not expressly mentioned by the ALJ (_see, e.g._, Docket Entry 16 at 14-17 (discussing, _inter alia_, Plaintiff's treatment records from physical therapists, urologist, and gastroenterologist)), this Recommendation has confined its analysis to evidence either actually cited by the ALJ or impliedly referenced by his more general statements (_see, e.g._, Tr. 43 ("[Plaintiff's] medical history shows that her [multiple sclerosis] is controlled with Tysabri, and that the disease does not cause her to have more than mild functional limitations on a chronic basis.").

fatigue "improved with medication and exercise").)  The ALJ also noted that, despite complaints of disabling symptoms, Plaintiff's "daily activities [] included preparing simple meals, caring for her cat, doing laundry, driving a car, shopping online, shopping in stores, volunteering at Reading Connections, spending time with relatives visiting from the United Kingdom, exercising at a fitness center two or three times per week, traveling to New York City to visit with friends, and vacationing at the beach."  (Tr. 44-45.)  Plaintiff challenges the ALJ's analysis of Plaintiff's subjective symptom reporting on two fronts, neither of which carry the day.

First, Plaintiff contests the ALJ's finding that Plaintiff's medications control her multiple sclerosis symptoms.  (See Docket Entry 13 at 6 (citing Tr. 43).)  In that regard, Plaintiff concedes that she "d[id] not experience exacerbations [of her symptoms] while on Tysabri," but notes that "Tysabri d[id] not repair the deficits that she ha[d] already acquired" (id. (citing Tr. 71)) and that, "[e]ven on Tysabri, [she] still had left leg spasticity, weakness, and left foot drop" (id. (citing Tr. 812)).  Concerning Adderall, Plaintiff admits that "it certainly d[id] help [her] fatigue," but that it "d[id] not cure her fatigue."  (Id. (citing Tr. 812-14).)  Plaintiff's argument falls short, because the ALJ did not find that Plaintiff's treatments eradicated or cured her multiple sclerosis symptoms, but merely that they "controlled" and "improved" her symptoms (Tr. 43) and rendered them "manageable"

15

(Tr. 44) to the point that Plaintiff experienced only "mild functional limitations on a chronic basis" (Tr. 43) and cited to evidence supporting that observation (see Tr. 43-44).

Second, Plaintiff faults the ALJ for "disregard[ing Plaintiff]'s qualifying statements about [her] daily activities" (Docket Entry 13 at 8 (citing Arakas v. Commissioner of Soc. Sec., 983 F.3d 83, 100 (4th Cir. 2020))), noting that she "said that she doesn't really cook anymore and only does take out or sandwiches because she is afraid of burning or cutting herself" (id. at 9 (citing Tr. 71)), "that if she goes shopping at the grocery store, she has to come home and rest" (id. (citing Tr. 72)), that, "[w]hen she visited friends in New York, she would do something with them and then take a break" (id. (citing Tr. 77)), that, "[w]hen she went to the beach, she would mostly sit on the porch because [s]he has trouble walking in the sand and she would be involved in no more than two or three hours total of activity in a day" (id. (citing Tr. 79)), and that she "doesn't drive that far and she has to use her right hand to drive" (id. (citing Tr. 79)). According to Plaintiff, "[r]ead in light of her qualifying statements, [Plaintiff]'s daily activities are not inconsistent with her allegations." (Id.) That contention falls short for two reasons.

To begin, as discussed above, the ALJ did not rely solely on Plaintiff's daily activities to discount her subjective symptom reports, but rather as one part of his overall analysis. (See Tr.

16

42-45.)  More significantly, however, the ALJ did not overstate Plaintiff's daily activities.  The record contains competing descriptions of Plaintiff's ability to engage in daily activities (compare Tr. 71-73 (describing limitations on meal preparation, shopping, and kitchen clean-up), 76-77 (detailing constraints during New York City trip), 79-80 (providing limits on driving and five-day beach visit), with Tr. 238-41 & 279-83 (Function Reports completed by Plaintiff's father reflecting Plaintiff regularly drives to places like stores, friends' houses, the YMCA, Reading Connections, and her book club, prepares meals most days, and does two to three hours of housework per day), 246-49 & 272-75 (Plaintiff's Function Reports indicating she fixes meals daily, shops two to three times per week, and attends a monthly book club), 422 (Plaintiff's statement to treating neurologist Dr. Richard A. Sater that she exercised at the YMCA five times per week)), and the ALJ chose to credit the statements reflecting a greater ability to engage in such activities.  Plaintiff has not provided the Court with any basis to disturb the ALJ's resolution of that conflicting evidence.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) ("Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence.").  Moreover, Plaintiff's ability to engage in such activities, even on a somewhat limited basis, provides some support, along with the

17

medical and opinion evidence discussed by the ALJ, for the ALJ's conclusion that Plaintiff's multiple sclerosis did not prevent her from performing a limited range of light work with postural restrictions (see Tr. 41-42).

In short, Plaintiff's first assignment of error fails as a matter of law.

### 2. Opinion Evidence Submitted to Appeals Council

Plaintiff's second and final assignment of error maintains that "[t]he [Appeals Council] erred by failing to evaluate and consider the medical opinion evidence submitted at the [Appeals Council]." (Docket Entry 13 at 9 (bold font and single-spacing omitted); see also Docket Entry 17 at 1-2.) More specifically, Plaintiff notes that she submitted two opinions from Dr. Sater to the Appeals Council (the "Sater Opinions") (see Docket Entry 13 at 9 (citing Tr. 28-29, 34)), but that "it is not apparent that anyone meaningfully considered th[e Sater Opinions]" (id. at 10), because "the [Appeals Council] stated specifically that th[e] [Sater Opinions] w[ere] not exhibited because they 'd[id] not show a reasonable probability that [they] would change the outcome of the [ALJ's] decision'" (id. at 10-11 (quoting Tr. 2)). According to Plaintiff, "[w]hile the [Appeals Council] is not required to articulate its reasons for denying review of an ALJ's decision, if the newer evidence undermines the ALJ's reasons for denying the claim, then remand is warranted as no fact finder has made findings

18

regarding that evidence or 'attempted to reconcile that evidence with the conflicting and supporting evidence in the record.'" (<u>Id.</u> at 11 (quoting <u>Hester v. Colvin</u>, No. 1:14CV751, 2016 WL 1364190, at *4 (M.D.N.C. Mar. 31, 2016) (unpublished) (Webster, M.J.), <u>recommendation adopted</u>, 2016 WL 5477614 (M.D.N.C. Sept. 29, 2016) (unpublished) (Tilley, S.J.)).)  Plaintiff thus contends that, because the Sater Opinions "would seem to undercut the ALJ's reasoning for finding so few limitations in the RFC[,] . . . remand is necessary for proper consideration of th[e Sater Opinions] and to reconcile [them] with the other medical evidence of record." (<u>Id.</u>)

As an initial matter, Plaintiff's reliance on <u>Hester</u> misses the mark, because that case applied a <u>prior</u> version of the regulatory provision governing the Appeals Council's consideration of new evidence.  <u>See</u> <u>Hester</u>, 2016 WL 1364190, at *4 (applying 20 C.F.R. § 404.970 (version effective until Jan. 16, 2017)).  That prior version of the regulation provided that, "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ's] hearing decision."  20 C.F.R. § 404.970(b) (1987).

The new version, effective January 17, 2017, provides as follows:

(a) The Appeals Council will review a case if—

. . .

(5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is <u>new</u>, <u>material</u>, and <u>relates to the period on or before the date of the hearing decision</u>, and there is a <u>reasonable probability that the additional evidence would change the outcome of the decision</u>.

(b) The Appeals Council will only consider additional evidence under paragraph (a)(5) of [ S]ection [404.970] if [the claimant] show[s] <u>good cause for not informing [the SSA] about or submitting the evidence [no later than five business days before the date of the scheduled ALJ hearing]</u> as described in § 404.935 because:

    (1) [The SSA's] action misled [the claimant];

    (2) [The claimant] had a physical, mental, educational, or linguistic limitation(s) that prevented [him or her] from informing [the SSA] about or submitting the evidence earlier; or

    (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented [the claimant] from informing [the SSA] about or submitting the evidence earlier. Examples include, but are not limited to:

        (i) [The claimant] w[as] seriously ill, and [his or her] illness prevented [him or her] from contacting [the SSA] in person, in writing, or through a friend, relative, or other person;

        (ii) There was a death or serious illness in [the claimant's] immediate family;

        (iii) Important records were destroyed or damaged by fire or other accidental cause;

        (iv) [The claimant] actively and diligently sought evidence from a

20

> source and the evidence was not
> received or was received less than 5
> business days prior to the hearing;
> or
>
> (v) [The claimant] received a
> hearing level decision on the record
> and the Appeals Council reviewed
> your decision.

20 C.F.R. § 404.970 (2017).[8] Thus, the new regulation adds <u>two</u> requirements to a claimant's burden to have new evidence considered by the Appeals Council in connection with a request for review: a claimant must show (1) <u>good cause</u> for the failure to submit the evidence in question at least five business days prior to the date of the ALJ's hearing pursuant to 20 C.F.R. § 404.935, and (2) a reasonable <u>probability</u> of a different outcome.[9]

---

[8] Evidence submitted to the Appeals Council is:

- "new if it is not part of the [administrative record] as of the date of the [ALJ's] decision";

- "material if it is relevant, i.e., involves or is directly related to issues adjudicated by the ALJ"; and

- "relate[d] to the period on or before the date of the hearing decision if the evidence is dated on or before the date of the hearing decision, or . . . post-dates the hearing decision but is reasonably related to the time period adjudicated in the hearing decision."

<u>Hearings, Appeals, and Litigation Law Manual</u> ("HALLEX"), § I-3-3-6B.2 ("Additional Evidence") (May 1, 2017), available at https://www.ssa.gov/OP_home/hallex/I-03/I-3-3-6.html.

[9] Long-standing Fourth Circuit law defined "material" as a reasonable <u>possibility</u> the new evidence would have changed the outcome of the case. <u>See</u> <u>Meyer v. Astrue</u>, 662 F.3d 700, 704 (4th Cir. 2011); <u>Wilkins v. Secretary, Dep't of Health & Human Servs.</u>, 953 F.2d 93, 96 (4th Cir. 1991). Thus, the new version of Section 404.970 increases a claimant's burden from showing a reasonable <u>possibility</u> to a reasonable <u>probability</u>, and makes the obligation to show a reasonable probability of a different outcome an <u>additional</u> requirement to showing materiality.

The Commissioner defends the Appeals Council's refusal to consider the Sater Opinions on three grounds. First, the Commissioner contends that the Sater Opinions, although dated after the ALJ's decision, do not qualify as "new," because "Plaintiff was represented by counsel and had every opportunity to obtain such documentation during the relevant period and prior to her administrative hearing." (Docket Entry 16 a 21-22 (citing, inter alia, Evangelista v. Secretary of Health & Human Servs., 826 F.2d 136, 140 (1st Cir. 1987), and Spencer v. Commissioner of Soc. Sec. Admin., Civ. No. 16-1735, 2017 WL 1379605, at *11 (D.S.C. Jan. 31, 2017) (unpublished)).) Second, the Commissioner maintains that "Plaintiff simply cannot establish good cause for her failure to submit [the Sater Opinions] earlier," because she "has not established (or even alleged) any 'unusual, unexpected, or unavoidable circumstance' beyond her control that prevented her from submitting [the Sater Opinions] earlier nor does she meet any of the other specific good cause definitions outlined in[ Section] 404.970(b)." (Id. at 23.) Third, the Commissioner credits the Appeals Council's finding "that Plaintiff's late-submitted evidence [did not] create[] a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision." (Id. (internal quotation marks omitted).)

In Plaintiff's Reply, she contests the Commissioner's argument that Plaintiff failed to demonstrate good cause for the late-

submitted Sater Opinions. (See Docket Entry 17 at 1-2.) According to Plaintiff, the Sater Opinions "did not yet exist at the time when the ALJ made his ruling on April 27, 2020" (id. at 1), and characterizes the Commissioner's "insistence that Plaintiff should have informed the ALJ of the existence of nonexistent evidence . . . odd and . . . a tortured reading of the five-day rule" (id. at 1-2 (internal quotation marks omitted)). Plaintiff further notes "that the list of unavoidable circumstances [under Section 404.970(b)] is not exhaustive," and argues that "[t]he fact that the evidence did not exist is such an unavoidable circumstance." (Id. at 2.)

**a.  New Evidence**

The Commissioner contends that the Sater Opinions, although dated after the ALJ's decision, do not qualify as "new," because "evidence is 'new' only if it was 'not in existence or available to the claimant at the time of the administrative proceeding'" (Docket Entry 16 at 21 (emphasis added) (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990))), and "Plaintiff was represented by counsel and had every opportunity to obtain such documentation during the relevant period and prior to her administrative hearing" (id. at 21-22 (citing, inter alia, Evangelista, 826 F.2d at 140, and Spencer, 2017 WL 1379605, at *11)). The SSA's updates to the Hearings, Appeals, and Litigation Law Manual ("HALLEX"), enacted to assist the Appeals Council with implementation of the new version

23

of Section 404.970 effective May 1, 2017, belie the Commissioner's argument. Evidence submitted to the Appeals Council qualifies as "new if it [wa]s not part of the [administrative record] as of the date of the [ALJ's] decision." HALLEX, § I-3-3-6B.2 ("Additional Evidence") (May 1, 2017), available at https://www.ssa.gov/OP_home/hallex/I-03/I-3-3-6.html. In light of that definition, which does not depend on the "availability" of the evidence, the Sater Opinions, created on May 22, 2020 (see Tr. 29) and June 2, 2020 (see Tr. 34), clearly qualify as "new." Thus, this factor would not have provided the Appeals Council with a basis to reject the Sater Opinions.

**b.  Good Cause**

The Commissioner next maintains that "Plaintiff simply cannot establish good cause for her failure to submit [the Sater Opinions] earlier," because she "has not established (or even alleged) any 'unusual, unexpected, or unavoidable circumstance' beyond her control that prevented her from submitting [the Sater Opinions] earlier nor does she meet any of the other specific good cause definitions outlined in[ Section] 404.970(b)." (Docket Entry 16 at 23.) The Appeals Council, in denying Plaintiff's request for review, remarked as follows:

> [Plaintiff] submitted a medical source statement [('MSS')] from Alexander Arya Eksir, M.D. dated June 1, 2020 (3 pages), a[n MSS] from [Dr.] Eksir[] dated June 1, 2020 (1 page), a[n MSS] from [Dr.] Sater[] dated June 2, 2020 (1 page), and a[n MSS] from [Dr.] Sater[] dated May

24

22, 2020 (2 pages). <u>[The Appeals Council] find[s] this</u>
<u>evidence does not show a reasonable probability that it</u>
<u>would change the outcome of the [ALJ's] decision. [The</u>
<u>Appeals Council] did not exhibit this evidence</u>.

(Tr. 2 (emphasis added).) Thus, the Appeals Council did <u>not</u>
expressly find that Plaintiff lacked good cause for failing to
submit the Sater Opinions in a timely manner to the ALJ but rather
found that the Sater Opinions did not establish a reasonable
probability of a different outcome. (<u>See</u> <u>id.</u>)

Courts across the country disagree on whether a federal
district court on judicial review can consider whether good cause
for the late-submitted evidence exists when the Appeals Council did
not cite lack of good cause as its basis for rejecting the
evidence. <u>Compare, e.g.</u>, <u>Sewell v. Commissioner, SSA</u>, No. 20-1409,
2021 WL 3871888, at *5 (10th Cir. Aug. 31, 2021) (holding the
plaintiff lacked good cause for late submission even though Appeals
Council did not cite <u>any</u> reason for not considering new evidence),
<u>cert. denied sub nom.</u>, <u>Sewell v. Kijakazi</u>, No. 21-795, 2022 WL
199400 (U.S. Jan. 24, 2022), <u>Y.F.L. v. Kijakazi</u>, No. 20CV4892, 2021
WL 5998442, at *3 (N.D. Cal. Dec. 20, 2021) (unpublished)
(considering whether the plaintiff had shown good cause for non-
compliance with five-day rule despite fact that "Appeals Council
did not cite lack of good cause as a reason for declining [the
plaintiff]'s additional evidence"), <u>Zimmerman v. Commissioner of</u>
<u>Soc. Sec. Admin.</u>, No. CV-19-575, 2021 WL 4129448, at *18–19 (D.

25

Ariz. Sept. 10, 2021) (unpublished) (finding good cause lacking notwithstanding Appeals Council's rejection of new evidence as chronologically irrelevant and immaterial), and Howell v. Saul, No. 2:18CV1323, 2019 WL 3416613, at *11 (D.S.C. July 10, 2019) (unpublished) (deeming good cause wanting notwithstanding Appeals Council's reasonable probability and chronological relevance rationales), recommendation adopted, 2019 WL 3413244 (D.S.C. July 29, 2019) (unpublished), with, e.g., Arndt v. Kijakazi, No. 4:19CV98, 2021 WL 5905646, at *6 (N.D. Ind. Dec. 14, 2021) (unpublished) (noting that "the [Appeals] Council never stated that it was dismissing the evidence for a lack of good cause[ and, t]hus, the [c]ourt will not affirm on those grounds"), Dara L. v. Saul, No. 1:19CV104, 2021 WL 1169653, at *4 n.4 (D. Utah Mar. 26, 2021) (unpublished) ("Where the Appeals Council did not reject the evidence for failure to establish good cause for missing the [five-day] deadline, the court does not reach this issue."), Rankin v. Saul, No. 1:19CV1195, 2020 WL 702749, at *22 (D.S.C. Feb. 12, 2020) (unpublished) (refusing to adderss Commissioner's good cause argument where Appeals Council found evidence "not new and material"), and Emmons v. Saul, Civ. No. 19-102, 2020 WL 376708, at *5 (D.N.M. Jan. 23, 2020) (unpublished) (declining to consider whether the plaintiff had good cause for failing to submit additional evidence earlier, where Appeals Council rejected additional evidence based on lack of chronological relevance).

Here, Plaintiff made no arguments directed at establishing good cause before the Appeals Council (see Tr. 23, 26, 329) or in her opening brief to this Court (see Docket Entry 13), the Commissioner argued lack of good cause in support of her Motion for Judgment on the Pleadings (see Docket Entry 16 at 18-24), and, although Plaintiff addressed good cause in her Reply, she did not raise the Appeals Council's "reasonable probability" rationale as a barrier to the Court's consideration of good cause (see Docket Entry 17 at 1-2). Moreover, the Appeals Council did not expressly waive the good cause requirement in any of its notices to Plaintiff (see Tr. at 1-3, 17). See Vahey v. Saul, Civ. No. 18-350, 2019 WL 3763436, at *6 n.6 (D. Haw. Aug. 9 2019) (unpublished) ("As far as the [c]ourt can tell, the Appeals Council did not explicitly waive the good cause requirement as it did for some claimants after the new [version of Section 404.970] went into effect."). Under such circumstances, the Court should follow the reasoning of cases like Sewell, Y.F.L., Zimmerman, and Howell, and assess whether Plaintiff has shown good cause under Section 404.970 for the untimely submission of the Sater Opinions.

As discussed above, Plaintiff posits that the fact that the Sater Opinions "did not yet exist at the time when the ALJ made his ruling on April 27, 2020" (Docket Entry 17 at 1) qualifies as "an unavoidable circumstance" preventing timely submission under Section 404.970(b)(3) (id. at 2). Many courts, however, have

27

rejected such an argument. <u>See, e.g.</u>, <u>Frasca v. Commissioner of Soc. Sec.</u>, No. CV 20-10194, 2021 WL 4077540, at *8 (D.N.J. Sept. 8, 2021) (unpublished) (holding that "a plaintiff must go beyond stating that evidence is new in order to fulfill the good cause requirement"); <u>Marquez v. Saul</u>, No. 1:20CV110, 2021 WL 2073510, at *5 (D.N.M. May 24, 2021) (unpublished) ("[T]hat [the new] opinions were dated after the ALJ's decision . . . on [its] face [does not] present the sort of 'unusual, unexpected, or unavoidable circumstance[s] beyond [the plaintiff's] control' that would warrant waiver of the Commissioner's evidentiary-submission deadlines."); <u>Smith v. Berryhill</u>, No. CV 1:18-337, 2019 WL 1549036, at *21 (D.S.C. Mar. 6, 2019) (unpublished) ("[The p]laintiff may not use the date of the [new evidence], which was [crea]ted after the hearing and days before the ALJ's decision was rendered, to automatically qualify as a good cause exception because it undermines the purpose of the rule."), <u>recommendation adopted</u>, 2019 WL 1533171 (D.S.C. Apr. 9, 2019) (unpublished); <u>Scherer v. Berryhill</u>, No. 2:17CV53, 2018 WL 3069205, at *3 (N.D.W. Va. Apr. 4, 2018) (unpublished) ("Nothing in the record indicates that there was any reason [the treating physician]'s findings were not presented to the ALJ other than the fact that the assessments had not yet taken place . . . . This is not one of the circumstances provided by [Section 404.970(b)] that would constitute good cause thereby allowing the Appeals Council to consider such evidence."),

28

recommendation adopted, 2018 WL 1960531 (N.D.W. Va. Apr. 26, 2018) (unpublished). Moreover, Plaintiff's argument glosses over the procedural progression of her DIB claim, which makes clear that Plaintiff had ample opportunity to obtain opinion evidence from Dr. Sater in a timely manner but simply failed to do so.

Plaintiff first retained her hearing counsel in connection with her request for reconsideration in April of 2018. (Tr. 119-20.) On June 18, 2019, the ALJ notified Plaintiff and her counsel that he would hear Plaintiff's case on October 31, 2019. (Tr. 149-77.) On October 24, 2019, Plaintiff's counsel sent the ALJ a letter "[p]ursuant to the 5 day rule" advising him "that all of the medical records [counsel was] aware of ha[d] been e-filed except for . . . medical records . . . from [Cone Health Behavioral Health Hospital] from June 13, 2019 through to the present." (Tr. 326.) In that letter, Plaintiff's counsel did not mention that she intended to obtain or submit opinion evidence from any provider. (See id.)[10]

At the beginning of the hearing, the ALJ inquired whether Plaintiff's counsel was "satisfied the record [wa]s complete" and whether "there [were] additional exhibits," to which Plaintiff's counsel responded that "[t]he one thing that [sh]e mentioned in the five-day letter did come in and [sh]e did submit it," and that she

_____

[10] The record reflects that Dr. Sater had treated Plaintiff for her multiple sclerosis symptoms since at least November 23, 2016. (See Tr. 364-68.)

"believe[d] other than ongoing <u>appointments</u> that [Plaintiff] ha[d],
the record [wa]s <u>complete</u>." (Tr. 62 (emphasis added).) During
another preliminary discussion between the ALJ and Plaintiff's
hearing counsel, the following discussion occurred:

> ALJ: Are there any medical opinions in the evidence that
> I need to be aware of?
>
> ATTY: No, I don't think so, Your Honor. <u>Trying to get
> doctors these days to write letters, they – most of them
> are overworked and it's just tougher than it used to be.
> So there aren't any</u>.
>
> ALJ: Yeah. Well, I appreciate that. But anything, even,
> you know, mention [sic] in an office visit note
> of . . . [Plaintiff] tells me she's applied for
> disability and I certainly support her in that – language
> along those lines?
>
> ATTY: I don't think there's anything like that. . . . .
>
> ALJ: Any work restrictions or limitations from any of the
> doctors, you know, [Plaintiff] should not lift or carry
> more than 20 pounds or anything like that?
>
> ATTY: No. But <u>I think [Plaintiff's] doctors were in
> agreement with [her] coming out of work in 2016</u>, weren't
> they?
>
> [PLAINTIFF]: [<u>T]hey would not take me out of work</u>, but I
> decided –
>
> ATTY: She decided to leave work in 2016, but <u>her doctors
> were fully on board at that point</u>.
>
> ALJ: <u>Is that documented</u>?
>
> ATTY: I don't think they mention it. <u>I read through
> everything last night and I don't think they mentioned it
> specifically</u>.

(Tr. 63-64 (emphasis added).) Despite that discussion, Plaintiff's
hearing counsel did not thereafter request that the ALJ hold the

30

record open to permit counsel to obtain such opinion evidence. (<u>See</u> Tr. 64-88.)

Following the ALJ's unfavorable decision, Plaintiff's hearing counsel requested review with the Appeals Council (Tr. 187-89) and submitted reasons she disagreed with the ALJ's decision (Tr. 22-23, 25-27, 328-30), along with new evidence including the Sater Opinions (Tr. 8-16, 28-34, 331-35). In her brief to the Appeals Council, Plaintiff's hearing counsel stated that, after Plaintiff "told [Dr. Sater] that she was denied disability[, he ] insisted on writing a letter and filling out a form about [Plaintiff's multiple sclerosis" (Tr. 22, 26, 329), but <u>counsel made no argument regarding good cause for her failure to submit that evidence at least five business days prior to the ALJ's hearing</u> (<u>see</u> Tr. 22-23, 25-27, 328-30). The Appeals Council thereafter advised counsel that, "[i]f [she] ha[d] more information, [she] must send it to [the Appeals Council] within 25 days." (Tr. 17.) The Appeals Council further informed counsel that she could "send [the Appeals Council] a statement about the facts and the law in [Plaintiff's] case or <u>additional evidence</u>," which Plaintiff's counsel must "show is new, material, and relates to the period on or before the date of the [ALJ's] hearing decision," as well as that she must also show a reasonable probability that the additional evidence would change the outcome of the [ALJ's] decision[, and] . . . <u>good cause for why [she] missed informing [the ALJ] about or submitting it</u>

31

earlier." (Id. (emphasis added).) So far as the record reflects, Plaintiff's counsel did not submit anything further to the Appeals Council.

As the above-described facts make clear, Dr. Sater treated Plaintiff since at least November 23, 2016 (see Tr. 364-68), and Plaintiff's hearing counsel represented Plaintiff since April 2, 2018 (see Tr. 119-20) and thus Plaintiff's hearing counsel had two years to obtain opinion evidence from Dr. Sater and submit it to the ALJ in a timely manner, but did not do so. Although Plaintiff's above-quoted hearing testimony that her doctors "would not take [her] out of work" in 2016 (Tr. 64) might explain why hearing counsel, at least initially, did not obtain opinion evidence from Dr. Sater, Plaintiff admitted that the ALJ's denial of her DIB claim in April 2020 prompted her to finally obtain the Sater Opinions (see Tr. 22, 26, 329). Those facts, however, simply do not demonstrate "unusual, unexpected, or unavoidable circumstance[s] beyond [Plaintiff or her hearing counsel's] control," 20 C.F.R. § 404.970(b)(3). See Wooding v. Commissioner of Soc. Sec., No. 4:10CV6, 2010 WL 4261268, at *6 (W.D. Va. Oct. 29, 2010) (unpublished) (finding "damaging" the "[p]laintiff's own admission that the [vocational specialist]'s report was submitted

32

simply to provide an after-the-fact contradiction of the ALJ's findings").[11]

Moreover, counsel's observation during the hearing that "most [health care providers] are overworked and it's just tougher than it used to be [to obtain written opinions from such providers]" (Tr. 63) falls far short of demonstrating that she "actively and diligently sought evidence from a source and the evidence was not received," 20 C.F.R. § 404.970(b)(3)(iv). See Marquez, 2021 WL 2073510, at *5 ("[N]othing in the record indicates when [the plaintiff] first requested th[e new] statement from [her treating physician], [or] what efforts she made to ensure that it was timely submitted to the Commissioner before the ALJ's hearing. In other words, there is no indication in the record that the [plaintiff] 'actively and diligently' sought [the treating physician]'s opinions on mental limitations but was nonetheless unable to procure them before the deadline to do so." (internal citations and

---

[11] The SSA's notice of final rule regarding the revisions to Section 404.970 make clear that the five-day rule would apply to neither 1) "evidence of ongoing treatment, which was unavailable at least 5 business days before the hearing," nor 2) additional evidence "a new representative" sought to introduce if the "new representative c[ould] show that a prior representative did not adequately uphold his or her duty to the claimant." Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process, 81 Fed. Reg. 90987-01, 90991 (Dec. 16, 2016) (emphasis added). The Sater Opinions do not qualify as "evidence of ongoing treatment," id., because they reflect opinions discussing Plaintiff's treatment that occurred prior to the ALJ's decision and do not reference (or enclose) office visits post-dating the ALJ's decision (see Tr. 28-29, 34). Moreover, as Plaintiff's hearing counsel submitted the Sater Opinions to the Appeals Council, she could not have argued that "a prior representative did not adequately uphold his or her duty to [Plaintiff]," id. (emphasis added).

some quotation marks omitted)); Howell, 2019 WL 3416613, at *11
(D.S.C. July 10, 2019) (unpublished) (finding good cause lacking
where the "[p]laintiff [alleg]ed only that he had difficulty in
obtaining additional testing and treatment; [and he] did not
explain, however, how he was suddenly able to pay for and obtain
the electrodiagnostic examination only two (2) months after the
ALJ's unfavorable decision").

In sum, Plaintiff has not demonstrated good cause under
Section 404.970(b) for her failure to inform the ALJ about or to
submit to the ALJ the Sater Opinions at least five business days
prior to the ALJ's hearing. As such, the Appeals Council did not
err in rejecting the Sater Opinions.

c. **Reasonable Probability**

Even assuming, arguendo, that the Appeals Council's
"reasonable probability" rationale precludes this Court from
finding Plaintiff lacked good cause for the untimely submission of
the Sater Opinions, Plaintiff still could not prevail, as the
Appeals Council did not err in rejecting the Sater Opinions because
they "d[id] not show a reasonable probability that [they] would
change the outcome of the [ALJ's] decision" (Tr. 2).

On May 22, 2020, Dr. Sater completed a pre-printed form
entitled "Medical statement regarding multiple sclerosis for Social
Security Disability claim." (Tr. 28-29.) On that form, Dr. Sater
indicated that Plaintiff's multiple sclerosis caused her to

34

experience a "crossed adduction response at [the] left knee," "[a]taxia," "[w]eakness," "[s]tiffness," "[d]ifficulty with bladder control," "[o]ther emotional disturbances," "[s]ustained disturbance of gross and dexterous movements," "[s]ustained disturbance of gait and station," and "[e]xtreme limitation in the ability to balance while standing or walking." (Tr. 28.) According to Dr. Sater, those symptoms would cause Plaintiff to have "[m]arked" limitation in "[p]hysical functioning" (id.), and would limit her to two hours total of work in a day, 15 minutes of standing at one time and for one hour total, occasionally lifting five pounds, no use of the left arm to work, and occasional to frequent use of the right arm to work (Tr. 29).

Thereafter, on June 2, 2020, Dr. Sater penned a "[t]o whom it may concern" letter in which he opined as follows:

> After a large exacerbation [sic] October 2017 causing severe left-sided weakness and clumsiness[, Plaintiff] was switched to Tysabri, an[ intravenous] medication.
>
> [Plaintiff] has significant physical impairments from the multiple sclerosis. She has left-sided weakness and spasticity involving the left leg and arm. She has a spastic gait and reduced balance. Additionally, there is reduced coordination with poor ability to do rapid alternating movements on the left. Furthermore, from her multiple spinal cord plaques, she has urinary urgency and frequency, treated with transurethral Botox injections into the bladder.
>
> Additionally, she has cognitive dysfunction from her [multiple sclerosis] with daily fatigue and cognitive issues from the [multiple sclerosis] causing reduce [sic] focus and attention. She also has depression.

35

Due to the combination of her physical and cognitive impairments and her fatigue, I feel that she is disabled and unable to work.

(Tr. 34.)

Although the Sater Opinions constitute the only opinions from Plaintiff's treating neurologist and conflict with the ALJ's RFC (compare Tr. 28-29, 34, with Tr. 41-42), those facts alone do not mandate remand:

> The plaintiff, relying on *Meyer[ v. Astrue*, 662 F.3d 700 (4th Cir. 2011)], argues that the [new] opinions meet the reasonable probability standard because the . . . evidence is the only opinion from the plaintiff's treating psychiatrist . . ., and because [one of the new opinions] contains additional mental limitations not consistent with the ALJ's RFC. . . . However, *Meyer* does not require remand in all cases where a treating physician's opinion was first submitted to the Appeals Council. Indeed, such a policy of blanket remand when the opinions are first submitted to the Appeals Council would create an incentive for claimants to avoid submitting treating physician opinions to the ALJ.

Moseley v. Berryhill, Civ. No. 6:18-1389, 2019 WL 2107917, at *11 (D.S.C. Apr. 22, 2019) (unpublished) (internal parenthetical and regulatory citations omitted), recommendation adopted, 2019 WL 2106181 (D.S.C. May 14, 2019) (unpublished). Moreover, the ALJ here, unlike in Meyer, 662 F.3d at 707, did not specifically rely on the lack of treating source medical opinions in the record in denying Plaintiff's DIB claim. (See Tr. 42-45.)

Furthermore, the ALJ's discussion of the medical evidence focused primarily on Dr. Sater's treatment records, and the ALJ noted the following pertinent findings:

36

- "according to a neurological note dated May 17, 2018, the motor strength in [Plaintiff's] left arm was only mildly reduced at 5-/5," Plaintiff "was tolerating [Tysabri] well," "she had not experienced a flare of the disease since she had started using the drug in November 2017," "her gait and leg strength had improved," "her Romberg was negative, indicating that her balance was unimpaired," and "the motor strength in her left leg . . . was slightly decreased at 5-/5" (Tr. 43 (citing Tr. 421, 425); see also Tr. 427-31 (7/12/18 office visit with Dr. Sater reflecting similar improvement and mild findings on exam), 433-38 (10/23/18 Dr. Sater treatment note recording stable symptoms and mild objective findings)); and

- "[i]n July [2019, Dr. Sater] again noted that [Plaintiff] had not suffered any exacerbations of her [multiple sclerosis] since she had started taking Tysabri," "that her gait was 'mildly wide,'" "that Adderall improved her fatigue, and that her endurance had improved with exercise" (Tr. 43 (citing Tr. 812, 818)).

Significantly, those same treatment records form the basis of the Sater Opinions. Thus, in light of the considerable improvement in Plaintiff's multiple sclerosis symptoms shown in Dr. Sater's 2018 and 2019 treatment records, the ALJ clearly would not have credited the Sater Opinions' extreme restrictions (which conflict with Dr. Sater's own records). Consideration of the ALJ's decision makes clear that, contrary to Plaintiff's arguments, the Sater Opinions would have neither "undermine[d] the ALJ's reasons for denying the claim" nor "undercut the ALJ's reasoning for finding so few limitations in the RFC" (Docket Entry 13 at 11). See Burrell v. Saul, No. 2:18CV2560, 2020 WL 2476974, at *13-14 (D.S.C. Jan. 15, 2020) (unpublished) (noting that "the conclusions in [the treating

37

physician]'s [p]hysical [c]apacities [e]valuation [we]re based on his treatment notes — the same notes considered by the ALJ in determining [the p]laintiff's disability status," and holding that, "[g]iven that [the treating physician]'s opinion is based on and reflective of information already in the record and considered by the ALJ, . . . [the physician]'s subsequent check-the-box form does not provide new and material evidence that would undermine the ALJ's prior findings"), <u>recommendation adopted</u>, 2020 WL 1270673 (D.S.C. Mar. 17, 2020) (unpublished); <u>Moseley</u>, 2019 WL 2107917, at *11-12 (finding Appeals Council did not err in determining that new evidence failed to raise reasonable probability of different outcome, and noting that "elements of [the new psychiatric] opinions [we]re refuted by evidence in the record before the ALJ — including [psychiatrist]'s own records" and that, "although the ALJ did not have the opportunity to review [the psychiatrist]'s [new] opinions, [the ALJ] relied on substantial evidence in reaching his conclusion that would have been relevant to the analysis of the opinion under 20 C.F.R. §[] 404.1527(c)").

Simply put, Plaintiff has not shown that the Appeals Council erred in declining to consider the Sater Opinions because those opinions "d[id] not show a reasonable probability that [they] would change the outcome of the [ALJ's] decision" (Tr. 2).

### III. **CONCLUSION**

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 15) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 24, 2022